# PX 62

# Interlocal Risk Financing Fund of North Carolina
### Property and Liability Insurance Trust administered by the NC League of Municipalities

## COMMON POLICY DECLARATIONS                ILDEC (07/2010)

**Policy Number:**   PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**FUND ADMINISTRATOR:**

North Carolina League of Municipalities
**Risk Management Services**
P.O. Box 1310
Raleigh, NC 27602

**POLICY PERIOD:**    From:   07/01/2011        To:   07/01/2012
At 12:01 a.m. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment. | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $9,525.45 |
| EMPLOYEE BENEFITS LIABLLITY COVERAGE PART | $35.88 |
| LIQUOR LIABILITY COVERAGE PART | Coverage Not Provided |
| BUSINESS AUTOMOBILE COVERAGE PART | $25,544.74 |
| POLICE PROFESSIONAL LIABILITY COVERAGE PART | Coverage Not Provided |
| PUBLIC OFFICIALS LIABILITY COVERAGE PART | $2,638.40 |
| EMPLOYMENT PRACTICES LIABILITY COVERAGE PART | $2,473.90 |
| CRIME COVERAGE PART | $705.20 |
| INLAND MARINE COVERAGE PART | $3,198.23 |
| PROPERTY COVERAGE PART | $13,378.95 |
| TOTAL PREMIUM | $57,500.75 |
| Incentive Credit | $4,822.00 |
| NET PREMIUM | $52,678.75 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**
   Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -   6/28/2012

MOCK 1790

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

GLDEC (07/2005)

**Policy Number:** PL-62053-2011-00

## NAMED INSURED & MAILING ADDRESS:

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**POLICY PERIOD:**  From: 07/01/2011    To: 07/01/2012

At 12:01 a.m. Standard Time at your mailing address shown above.

| Limits of Insurance | |
|---|---|
| Each Occurrence Limit | $2,000,000 |
| Products and Completed Operations Aggregate Limit | $2,000,000 |
| Personal and Advertising Injury Limit | $2,000,000 |
| General Aggregate Limit | Not Applicable |
| Damage to Premises Rented to You Limit | $1,000,000 Any one fire |
| | |
| Deductible (Each Occurrence) | $1,000 |
| Premium | $9,525.45 |

### Optional Coverages

Forms and Endorsements:

Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -  6/28/2012

MOCK 1791

### Interlocal Risk Financing Fund of North Carolina
### EMPLOYEE BENEFITS LIABILITY COVERAGE PART DECLARATIONS
This coverage is a **CLAIMS MADE** Policy

EBDEC (07/2005)

**Policy Number:** PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**POLICY PERIOD:**     From:   07/01/2011     To:   07/01/2012
At 12:01 a.m. Standard Time at your mailing address shown above.

Retroactive Date: 7/1/1988

This insurance does not apply to acts which occur before the Retroactive Date shown above.

| Limit of Insurance | |
|---|---|
| Each Claim Limit | $1,000,000 |
| Annual Aggregate Limit for all Claims | $1,000,000 |
| Deductible (Each Claim) | $1,000 |
| Premium | $35.88 |

Forms and Endorsements:
Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -   6/28/2012

MOCK 1792

**PUBLIC OFFICIALS LIABILITY COVERAGE PART DECLARATIONS**     POLDEC (07/2010)

This coverage is a **CLAIMS MADE** Policy

**Policy Number:**  PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

| | | | | |
|---|---|---|---|---|
| **POLICY PERIOD:** | From: | 07/01/2011 | To: | 07/01/2012 |

At 12:01 a.m. Standard Time at your mailing address shown above.

Retroactive Date: <u>7/1/1988</u>
This insurance does not apply to wrongful acts which occur before the Retroactive Date shown above.

| Limits of Insurance | |
|---|---|
| Each Claim Limit | $1,000,000 |
| Annual Aggregate Limit for all Claims | $3,000,000 |
| Deductible (Each Claim) | $5,000 |
| Premium | $2,638.40 |

Forms and Endorsements:
Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -   6/28/2012

MOCK 1793

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS**   EPLDEC (07/2010)

This coverage is a **CLAIMS MADE** Policy

**Policy Number:**  PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**POLICY PERIOD:**   From:   07/01/2011          To:    07/01/2012

At 12:01 a.m. Standard Time at your mailing address shown above.

Retroactive Date: 7/1/1988

This insurance does not apply to wrongful acts which occur before the Retroactive Date shown above.

| Limits of Insurance | |
|---|---|
| Each Claim Limit | $1,000,000 |
| Annual Aggregate Limit for all Claims | $3,000,000 |
| Deductible (Each Claim) | $5,000 |
| Premium | $2,473.90 |

Forms and Endorsements:

Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -  6/28/2012

MOCK 1794

**Policy Number:** PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**POLICY PERIOD:**      From:    07/01/2011                    To:    07/01/2012
At 12:01 a.m. Standard Time at your mailing address shown above.

| Limits of Insurance | | |
|---|---|---|
| Other Insurance: Coverage Is Written On Excess Basis | | |
| **Employee Dishonesty** | $25,000 | Limit - per Occurrence |
| | $250 | Deductible - per Occurrence |
| | $175.60 | Premium |
| **Forgery Or Alteration** | $25,000 | Limit - per Occurrence |
| | $250 | Deductible - per Occurrence |
| | $43.90 | Premium |
| **Inside the Premises - Theft of Money and Securities** | $5,000 | Limit - per Occurrence |
| | $250 | Deductible - per Occurrence |
| | $25.50 | Premium |
| **Outside the Premises** | $5,000 | Limit - per Occurrence |
| | $250 | Deductible - per Occurrence |
| | $10.20 | Premium |

**Public Official Scheduled Bond for Definite Term**

The information below is for billing purposes only. No Public Official Bond is afforded by IRFFNC. The Public Official Scheduled Bond is issued and insured by Travelers Casualty and Surety Company of America. Refer to the Public Official Bond Verification Certificate and the Public Official Bond for Definite Term Coverage Form for coverage information.

| Public Officials Bond | | | |
|---|---|---|---|
| Position | Limits of Insurance | Deductible | Premium |
| Finance Officer | $50,000 | $0 | $450.00 |

If "Coverage Not Provided" is inserted above opposite any specified Insuring Agreement, such Insuring Agreement and any other reference thereto in this policy is deleted.

Forms and Endorsements:

Refer to "IRFFNC Forms and Endorsements Schedule"

**CANCELLATION OF PRIOR INSURANCE ISSUED BY US:**

By acceptance of this Coverage Part you give us notice cancelling all prior policies. The cancellation to be effective at the time this Coverage Part becomes effective.

Printed on Date -   6/28/2012

MOCK 1795

**Policy Number:** PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC 27028

**POLICY PERIOD:**  From: 07/01/2011    To: 07/01/2012

At 12:01 a.m. Standard Time at your mailing address shown above.

| Limits of Insurance | | |
|---|---|---|
| **MUNICIPAL EQUIPMENT** | $330,301 | Limit |
| | $1,000 | Deductible per Occurrence |
| | $2,145.28 | Premium |
| **COMPUTER EQUIPMENT & MEDIA** | $103,000 | Limit |
| | $500 | Deductible per Occurrence |
| | $145.75 | Premium |
| **FINE ARTS** | $50,000 | Limit |
| | $1,000 | Deductible per Occurrence |
| | $0.00 | Premium |
| **PORTABLE EQUIPMENT** | $84,000 | Limit |
| | $500 | Deductible per Occurrence |
| | $907.20 | Premium |

Forms and Endorsements:

Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date - 6/28/2012

MOCK 1796

**Policy Number:** PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC  27028

**POLICY PERIOD:** From: 07/01/2011    To: 07/01/2012

At 12:01 a.m. Standard Time at your mailing address shown above.

---

| BUILDING AND PERSONAL PROPERTY | | LIMITS |
|---|---|---|
| | $12,684,341 | Limit |
| | | Blanket Coverage for Buildings and Personal Property as listed on Property Schedule |
| | $1,000 | Deductible per Occurrence |
| Special policy provisions may apply to Flood, Earthquake and Named Windstorm | | |
| | $13,378.95 | Premium |
| Refer to Property Schedule for Valuation Basis | | |

**OPTIONAL COVERAGES**

**Forms and Endorsements:**

Refer to "IRFFNC Forms and Endorsements Schedule"

Printed on Date -  6/28/2012

MOCK 1797

Interlocal Risk Financing Fund of North Carolina
**BUSINESS AUTO DECLARATIONS**

BADEC (07/2005)

**Item One**

**Policy Number:**  PL-62053-2011-00

**NAMED INSURED & MAILING ADDRESS:**

Town of Mocksville
171 S. Clement Street
Mocksville, NC  27028

**POLICY PERIOD:**  From: 07/01/2011   To: 07/01/2012

At 12:01 a.m. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy

**Forms and Endorsements attached to this policy:**

Refer to "IRFFNC Forms and Endorsements Schedule"

**Item Two**          **Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos".  "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos (Entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form shows which autos are covered) | Limit (The most we will pay for any one accident or loss) Deductible (per accident) | Premium |
|---|---|---|---|
| Auto Liability | 1 | $2,000,000  Limit<br>$2,500  Deductible | $14,625.29 |
| Uninsured Motorists | 7 | $250,000  Limit<br>$2,500  Deductible | $1,591.07 |
| Physical Damage Comprehensive Coverage | 7,8 | Actual Cash Value or cost of repair whichever is less, minus the deductible for each covered auto as indicated on Business Auto Schedule.  See Item Four for Hired or Borrowed "Autos". | $2,127.99 |
| Physical Damage Collision Coverage | 7,8 | Actual Cash Value or cost of repair whichever is less, minus the deductible for each covered auto as indicated on Business Auto Schedule.  See Item Four for Hired or Borrowed "Autos". | $6,706.39 |

**Item Three**          **Schedule of Covered Autos You Own -**  Refer to Business Auto Schedule

**Item Four**          **Schedule of Hired or Borrowed Covered Auto Coverage and Premiums**

| Coverages | Limit of Insurance (The most we will pay for any one accident or loss) | Deductible For each covered auto | Premium |
|---|---|---|---|
| Hired or Borrowed Comprehensive | Actual Cash Value or cost of repair whichever is less, minus the deductible for each covered auto. | $500 | $15.00 |
| Hired or Borrowed Collision | Actual Cash Value or cost of repair whichever is less, minus the deductible for each covered auto. | $500 | $15.00 |

Printed on Date -  6/28/2012

MOCK 1798

**Item Five**    **Schedule of Impounded Auto Coverage**    BADEC (07/2005)

| Coverages | Limit of Insurance<br>The Most we will pay | Deductible<br>For each covered<br>auto for loss | Premium |
|---|---|---|---|
| Impounded Auto Comprehensive | $100,000   Each Accident | $1,000 | $200.00 |
| Impounded Auto Collision | $100,000   Each Accident | $1,000 | $264.00 |

Printed on Date -   6/28/2012

MOCK 1799

# IRFFNC EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## THIS POLICY PROVIDES CLAIMS-MADE COVERAGE.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Interlocal Risk Financing Fund of North Carolina, hereinafter called IRFFNC.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI - DEFINITIONS.

## I. SECTION I - EMPLOYMENT PRACTICES LIABILITY COVERAGE

**1. Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages resulting from "claims", to which this insurance applies, against the insured by reason of "employment wrongful act(s)". No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to "employment wrongful act(s)" which occurred in whole or in part prior to the Retroactive Date or which occur after the policy period. If no retroactive date is shown in the declarations, the retroactive date will be the effective date of this coverage part. We may, at our discretion, investigate and settle any "claim" or "suit". We will have the right and duty to defend any "suit" seeking those damages. But:

   (1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   b. This insurance applies only if a "claim" for damages because of the "employment wrongful act(s)" is first made against any insured during the policy period.

   (1) A "claim" by a person or organization seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

   (2) All "claims" for damages resulting from or involving the same "employment wrongful act(s)" or one "employment wrongful act(s)" will be deemed to have been made at the time the first of those "claims" is made against any insured.

   (3) All "claims" based on or arising out of the same or related "employment wrongful act(s)" or offenses by one or more insureds shall be considered first made when the first of such "claims" is made. Related "employment wrongful act(s)" means two or more wrongful acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions, or causes.

MOCK 1800

Case 1:12-cv-00333-TDS-JEP   Document 47-6   Filed 07/08/13   Page 12 of 22

## 2. Exclusions.

This insurance does not apply to any "claim" made against the insured:

a. Based upon or attributable to the insured gaining any profit, advantage or remuneration to which the insured is not entitled.

b. Which is brought or contributed to in fact by any dishonest or by fraudulent act or omission or any criminal act or omission of the insured, however, this exclusion does not apply to:

    (1) any act which is the basis of a malicious prosecution "claim" against the insured;

    (2) the insured's vicarious liability arising out of any negligent act, error, omission of an employee of the insured committed with actual dishonest, fraudulent, criminal or malicious purpose or intent.

c. For any damage arising out of the willful violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent or any insured.  Nor shall we have any obligation to indemnify the insured for any loss, cost, civil fine, penalty or expense against any insured arising from any complaint or enforcement action from any federal, state or local governmental regulatory agency.

d. For any damage arising from "bodily injury", "property damage" including diminution of value or loss of use, "personal and advertising injury", or acts committed in the "administration" of your "employee benefit program."

e. Any "claim" or "suit" seeking punitive or exemplary damages. If a "suit" shall have been brought against the insured for a "claim" falling within the coverage provided by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action, but we shall not have an obligation to pay for any cost, interest, or damages attributed to punitive or exemplary damages.

f. For which the insured is entitled to indemnity or payment by reason of having given notice of any circumstances which might give rise to a "claim" under any policy or policies the term of which has expired prior to the inception date of this policy.

g. For "claims" or "suits"  seeking relief or redress in any form other than compensatory damages. Nor shall we have any obligation to indemnify the insured for any costs, fees including attorneys fees, or expenses which the insured shall become obligated to pay as a result of an adverse judgment for injunctive or declaratory relief; however, we will afford defense to the insured for such "claims" or "suits", if not otherwise excluded, where compensatory damages are requested. However, IRFFNC will afford defense to the insured for such "claims" as provided in Section I - Supplementary Payments.

h. For back wages, overtime or similar "claims", even if designated as liquidated damages, under any federal, state or local statutes, rules, ordinance or regulations.

i. For any "claims" arising from collective bargaining agreements.

j. For "claims" arising from any liability assumed by the insured under any contract or agreement, unless the insured would have been legally liable in the absence of such contract or agreement.

MOCK 1801

Case 1:12-cv-00333-TDS-JEP   Document 47-6   Filed 07/08/13   Page 13 of 22

k. Under the following laws:

    (1) Any workers compensation, disability benefits or unemployment compensation law, or any similar law, provided however, this exclusion shall not apply to any "claim" based upon, arising from, or in consequence of any actual or alleged retaliatory treatment of the claimant by the Insured on account of the claimant's exercise of rights pursuant to any such law;

    (2) Arising out of any insured's (1) obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including subsequent amendments or any similar federal, state or local law or regulation; or (2) administration of any employee benefit plan or self-insurance fund.

    (3) The Fair Labor Standards Act, the National Labor Relations Act of 1938, the Worker Adjustment and Retraining Notification Act (Public Law 100-37991988), the Consolidated Omnibus Budget Reconciliation Act of 1985, or the Occupational Safety and Health Act, or any amendment thereto, or any similar federal, state or local law.

    (4). Any liability or obligation of the insured under the Jones Act, general maritime law, the Federal Employers Liability Act, Federal Employee Compensation Act, the Defense Base Act or the U.S. Longshoremen and Harbor Workers' Compensation Act.

l. For any "claim" arising out of a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act.

m. Sexual Acts

    For any "claims" or "suits" arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or any other sexual acts of any nature, kind or description, by whatever name used, by any employee, agent, officer, director, official, board member, commissioner, or representative of the Named Insured public entity shown in the Declarations.

    For the limited category of "claims" or "suits" against the Named Insured public entity shown in the Declarations itself for any alleged vicarious liability, respondeat superior, or negligent hiring, training, or supervision arising from or relating in any way to any unexpected, unintended, and unanticipated loss, damage or injury arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or any other sexual acts of any nature, kind or description, by whatever name used, **a defense only will be provided for the Named Insured public entity shown in the Declarations itself, but without providing any coverage or indemnification** for any "claims", "suits", judgments or settlements which might be entered against, into, by or on behalf of the Named Insured public entity shown in the Declarations or any employee, agent, officer, director, official, board member, commissioner, or representative of the Named Insured public entity shown in the Declarations.

n. (1) For any "employment wrongful act(s)" or offense which takes place prior to the policy period of the coverage part if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim"; or

    (2) For any loss for which the insured is entitled to indemnity or payment by reason of having given notice of any circumstances which might give rise to a "claim" under any policy or policies the term of which has expired prior to the inception date of the policy.

o. For any damages which result from a wrongful act committed intentionally with knowledge of wrong-doing; however, the Fund will provide a defense to the Named Insured for suits containing such allegations, but only if such allegations are not otherwise excluded from coverage.

p. For any damages arising out of any actual or alleged "public official(s) wrongful act(s).

MOCK 1802

Case 1:12-cv-00333-TDS-JEP   Document 47-6   Filed 07/08/13   Page 14 of 22

q. For any "claim" or "suit" against the insured, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond, arising directly or indirectly out of:

Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

   (a) Computer hardware, including microprocessors;

   (b) Computer application software;

   (c) Computer operating systems and related software;

   (d) Computer networks;

   (e) Microprocessors (computer chips) not part of any computer system; or

   (f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed above in this endorsement.

Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described above.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any "claim" or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments and appeal bonds required in any "suit" we defend, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $100 a day because of time off from work. Such expenses, do not include salaries of officials or employees of the public entity.

4. All costs taxed against the insured in the "suit".

5. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**These payments under #1 through #6 will not reduce the Limits of Insurance.**

## SECTION II - WHO IS AN INSURED

Each of the following is an insured:

a. The public entity named in the Declarations.

b. Your lawfully elected, appointed or employed officials, past, present and future, but only for acts within the course and scope of their duties.

c. Your employees, but only for their acts in the course and scope of their employment.

MOCK 1803

d. Any person providing services for you under mutual aid or similar agreements.

e. The estates, heirs, legal representatives or assigns of deceased persons who were insureds at the time of the "employment wrongful act(s)" upon which a "claim" is based, but only to the extent that they would otherwise be provided coverage under this Coverage Form.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;
   b. "Claims" made or "suits" brought; or
   c. Persons or organizations making "claims" or bringing "suits".

2. The Annual Aggregate Limit is the most we will pay for all damages

3. Subject to 2. above, the Each Claim Limit is the most we will pay for all loss arising out of any "employment wrongful act(s)" covered by this policy. "Claims" based on and arising out of the same act or interrelated acts of one or more insureds shall be considered to be a single "claim".

The Limits of Insurance of this coverage part applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purposes of determining the Limits of Insurance.

## SECTION IV - EMPLOYMENT PRACTICES LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's successor will not relieve us of our obligations under this policy.

### 2. Duties In The Event of Potential or Actual "Claim" or "Suit"

a. You must see to it that we are notified as soon as practicable after you become aware of any situation or circumstances which may result in a "claim" being made against you alleging an "employment wrongful act(s)". To the extent possible, notice should include:

   (1) A description of the situation or circumstances, including how, when and where it occurred;
   (2) The names and addresses of any involved persons and witnesses; and
   (3) The nature and extent of any damage arising or likely to arise out of the situation or circumstances.

b. If a "claim" is received by any insured you must:

   (1) Immediately record the specifics of the "claim" and the date received; and
   (2) Notify us, in writing, immediately.

c. You and any other insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit",
   (2) Authorize us to obtain records and other information;
   (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit", and

MOCK 1804

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

a. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall not be reduced by the existence of such other insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all such other insurance.

b. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable Method of Sharing provision below:

Method of Sharing:

(1) If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

(2) If any of the other insurance does not permit contribution by equal shares, we will contribute by equal limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

MOCK 1805

Case 1:12-cv-00333-TDS-JEP   Document 47-6   Filed 07/08/13   Page 17 of 22

**5. Representations**

By accepting this policy, you agree that:

a. The Application for insurance completed in solicitation of this insurance is made a part of this policy as though set forth in full herein;

b. The statements in the Declarations and Application for insurance are accurate and complete;

c. Those statements are based upon representations you made to us; and

d. We have issued this policy in reliance upon your representations.

**6. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom "claim" is made or "suit" is brought.

**7. Transfer Of Rights Of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**8. Deductible**

a. Our obligation under Section I of this policy to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amount stated in the Declarations.

b. The deductible amount stated in the Declarations, if any, applies to all damages sustained by any person or organization as the result of any one "claim". "Claims" based on or arising out of the same act or interrelated acts of one or more insureds shall be considered a single "claim".

c. The deductible amount stated in the Declarations applies to each "claim" and includes loss payments and adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

d. The terms of this insurance, including those with respect to (1) our right and duty to defend any "suits" seeking damages, and (2) your duties in the event of potential or actual "claim" or "suit" apply irrespective of the application of the deductible amount.

e. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**9. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

MOCK 1806

Case 1:12-cv-00333-TDS-JEP   Document 47-6   Filed 07/08/13   Page 18 of 22

**10. Cancellation**

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2) 45 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy and the application contain all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to five years afterward.

**13. Premiums**

The first Named Insured shown in the Declarations:

    a. Is responsible for the payment of all premiums; and

    b. Will be the payee for any return premiums we pay.

**14. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## SECTION V - EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:

    a. This policy is canceled or not renewed; or

    b. We renew or replace this policy with insurance that:

        (1) Has a Retroactive Date later than the date shown in the Declarations of this policy; or

        (2) Does not apply on a claims-made basis.

MOCK 1807

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy and lasts for sixty days.

   The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

3. A Supplemental Extended Reporting Period of up to three years may be offered by us at our discretion, but only by an endorsement and for an extra charge. This supplemental period starts sixty days after the end of the policy period.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of Insurance available under this policy for future payment of damages; and

   d. Other related factors.

   This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

4. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" arising out of "employment wrongful act(s)" or offenses that occur on or after the retroactive date shown in the declarations and before the end of the policy period.

   "Claims" for such injury or damage which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

   Once in effect, Extended Reporting Periods may not be canceled.

5. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this policy applies.

**SECTION VI - DEFINITIONS**

1. "Administration" means:

   a. Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any employee's participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

5. "Claim" means a demand received by the insured for money damages, non monetary damages as provided in the SUPPLEMENTARY PAYMENTS, filing and or service of suit papers or arbitration proceedings filed against the insured arising out of "employment wrongful act(s)" to which this insurance applies.

6. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an employee may subscribe to such benefits and such benefits are made generally available to those employees who satisfy the plan's eligibility requirements;

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an employee may subscribe to such benefits and such benefits are made generally available to all employees who are eligible under the plan for such benefits;

    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

7. "Employment wrongful act(s)" means actions involving refusal to employ, termination of employment, false arrest, false imprisonment, coercion, demotion, failure to promote, evaluation, reassignment, retaliatory action, wrongful hiring or supervision, discipline, defamation, harassment, humiliation, libel, slander, invasion of privacy, wrongful eviction, malicious prosecution, abuse of process, discrimination or other employment-related practices, policies, acts or omissions. "Employment wrongful act(s)" does not include any "public official(s) wrongful act(s)".

8. "Personal and advertising injury" means an injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

MOCK 1809

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement";

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

h. Shock humiliation, mental injury and mental anguish.

9. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

10. "Public official(s) wrongful act(s)" means any alleged or actual breach of duty, or violation of any federal, state or local civil rights, by an insured while acting within the scope of his/her duties as a public official for the public entity named in the Declarations. "Public official(s) wrongful act(s)" does not include any "employment wrongful act(s)".

11. "Suit" means a civil proceeding in which damages because of "employment wrongful act(s)" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding or any other alternative dispute resolution proceeding alleging such damages to which you must submit or submit with our consent.

MOCK 1810