UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil No: 1:12-cv-333

| | |
|---|---|
| KENNETH L. HUNTER, RICK A. DONATHAN, AND JERRY D. MEDLIN,<br>    Plaintiffs,<br><br>v.<br><br>TOWN OF MOCKSVILLE, NORTH CAROLINA; ROBERT W. COOK, in his official capacity as Administrative Chief of Police of the Mocksville Police Department and in his individual capacity; CHRISTINE BRALLEY, in her official capacity as Town Manager of the Town of Mocksville and in her individual capacity,<br>    Defendants. | PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AND EQUITABLE RELIEF |

_____

## PROCEDURAL BACKGROUND

Plaintiffs filed this action seeking damages, pursuant to federal and state law, for violations of their rights under the First Amendment of the United States Constitution, violation of their rights under Article I, §§ 1 and 14 of the North Carolina Constitution, and their wrongful terminations in violation of the public policy of North Carolina.

In an eight-day trial which began on May 2, 2016, and concluded on May 11, 2016, the jury found each defendant liable to each plaintiff for the loss of his employment. The jury awarded each plaintiff compensatory damages, punitive damages, and rendered advisory verdicts on front pay.

**FACTS SUPPORTING EQUITABLE RELIEF**

Plaintiffs have established that each plaintiff was a long-term officer of Mocksville Police Department (MPD), each had an exemplary record, and none of the three had received notice of any grounds for termination. While Major Hunter had been removed from a second-in-command position as Assistant Chief, defendants have denied that it was a demotion, and the move did not affect his compensation or rank. Plaintiff Donathan was promoted in the same restructuring, and had been told by Chief Cook on several occasions in the month preceding his termination that he was an excellent officer who would be in line for a captain position in the future. While Detective Medlin had raised issues of public concern in the past, there was no indication that his employment was in jeopardy at the time of the terminations. The evidence showed that, prior to plaintiffs, no officer had ever been fired under Chief Robert Cook.

In addition to each plaintiff having substantial job security at MPD, due to the terminations, and as evidenced during trial, each of the three has experienced enormous difficulty in attempting to reestablish himself in a law enforcement

2

career.  Neither plaintiff Medlin nor plaintiff Hunter has been given a chance to revive his career, and the only opportunity plaintiff Donathan was able to secure was untenable as a living situation for his family.  Suffice it to say, reinstatement is quite possibly the only means plaintiffs have of recovering the careers in law enforcement that they spent years building.

## DISCUSSION

As stated, the plaintiffs' federal claims against the individual defendants are based on 42 U.S.C. § 1983.  That section provides that a public employee who is a prevailing plaintiff in proving that the defendant violated his constitutional rights in terminating his employment is entitled to all relief in order to be made whole.  Such relief includes back pay, other compensatory damages, punitive damages and any equitable relief which the Court may deem appropriate. Equitable relief specifically includes reinstatement to the position from which he was terminated.  *Duke v. Uniroyal, Inc.*, 928 F.2d 1413 (1991).

The make-whole doctrine, which evolved as a part of discrimination laws under Title VII and the ADEA, clearly applies to § 1983 cases as well.  As the Court states in *Squires v. Bonser,* 54 F.3d 168 (1995), "The same is true under § 1983: the make-whole goal '[does] not differ when the basis of the underlying right is the Constitution rather than a statute such as Title VII.'"  *Squires,* 54 F.3d at 172 (quoting *Gurmankin v. Constanzo,* 626 F.2d 1115 (3d Circuit 1980).  Courts are

clear that the same considerations that form the framework for make-whole relief under discrimination laws apply to citizens who are the victims of constitutional violations as well. As the *Squires* court notes, "…the central goals of make-whole relief and deterrence must guide a district court's consideration of reinstatement under both." *Squires,* 54 F.3d at 172. Using that rationale, the goal in the instant case is to make each plaintiff whole, in whatever form that may require.

In *Uniroyal*, the Fourth Circuit echoed most other circuits in stating that reinstatement is the "preferred" remedy. In determining reinstatement, the Court must consider whether reinstatement is feasible or whether circumstances exist that may make reinstatement either impossible or inappropriate. The Court notes several possibilities rendering reinstatement inappropriate, such as "extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible," *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1172 (1985), or when the litigation itself created such animosity between the parties that any potential employer-employee relationship was irreparably damaged, or when there was no comparable position available. See *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984).

The purpose of equitable remedies in cases such as the instant one is to put plaintiffs in the positions they would occupied had defendants not violated their rights. As the Court states in *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161

4

(1983):

> The manifest purpose of this broad grant of legal and equitable power is to enable the courts to fashion whatever remedy is required to fully compensate an employee for the economic injury sustained by him. The power so granted is sufficient to authorize an award of future loss of earnings in appropriate cases. To deny that authority would defeat a purpose of the Act to make a victim of discrimination "whole" and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer. To deny such authority would remove a deterrent force against future violations.

Similarly, under state law, North Carolina Courts have provided avenues for both equitable relief in the form of reinstatement, and legal relief in the form of front pay. In terms of front pay, the North Carolina Court of Appeals directly addressed and resolved the issue of future damages in their decision in *Blakely v. Town of Taylortown*, 233 N.C. App. (2014). *See also*, *Corum v. University of North Carolina,* 330 N.C. 761 (1992), reinstatement is part of the arsenal a trial judge possesses when crafting relief for a particular plaintiff: "…such redress could consist of, inter alia, reinstatement to his prior status or a comparable status…" *Corum,* 330 N.C. at 784.

Accordingly, across the country—whether a plaintiff's discharge is found to be unlawfully discriminatory or in violation of his constitutional rights—at the foundation of equitable relief is a commitment on the part of the courts to make whole those whose rights have been violated. *See, e.g.*, 29 U.S.C. § 626(b). Under the Age Discrimination of Employment Act, Congress grants the court broad

5

powers in awarding legal and equitable relief, stating that "the Court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including, without limitation judgments compelling employment, reinstatement or promotion…" Courts consistently cite the remedial nature of equitable relief, and the flexibility and latitude that the Court must have in administering that relief. Without that power, a prevailing plaintiff could not be made whole, by being fully restored to his former position, or awarded full front pay in the event reinstatement is inappropriate, and the deterrent effect would be lost. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413 (1991).

As stated above, there may be obstacles to the feasibility and practicality of reinstatement. Fortunately, however, the law gives the Court great latitude in making plaintiffs *whole*, whatever that means in a particular case. In the instant case, plaintiffs should be reinstated, but in order to be made whole, and to make reinstatement feasible, each should be reinstated to the same rank, with pay that bridges the raises customary over the four and a half years they have been out of work. Because of the rigid hierarchy in a police department, and the fixed chain of command, reinstatement to the lower ranks is not feasible, or tenable under the circumstances. In order to be sustainable and to avoid potential hostility, plaintiffs should be reinstated to positions of some authority, and the Court should consider the possibility of promotion, especially for Lieutenant Donathan, who had received

6

Chief Cook's endorsement for an open Captain position prior to his termination. Plaintiff Hunter should be reinstated, at the least, to the position of Major, and plaintiff Medlin should be reinstated, at the least, to his rank of Detective.

Further, each plaintiff is entitled to some assurance that the litigation has not made a return to the MPD unfeasible. In that light, the legitimate concern remains that if Christine Bralley continues in her role as town manager, as a direct superior on the chain of command, problems could arise.[1] Due to the litigation, and the fact that all three plaintiffs were awarded punitive damages from Ms. Bralley, she should be removed from the direct chain of command of the three plaintiffs. Finally, the law enforcement certification of plaintiffs Hunter and Medlin should be reinstated, as they have lapsed in the time period since their terminations. That re-certification, obviously, would be a critical part of the *make-whole* doctrine.

In the absence of reinstatement—if the Court finds that reinstatement is not feasible or not practical—the Court should award full front pay, taking into consideration the circumstances of each plaintiff, the loss of his career, and his inability to gain meaningful employment in the time period since the terminations. A jury of seven peers sat for eight days, listening to the testimony, and the evidence of the actions of the defendants, and determined that each plaintiff should

---

[1] Certainly, one would hope that a manager who has been found liable for the termination of three excellent officers of the MPD, utterly without investigation, in the intentional violation of the law under the federal and state Constitutions; and who had punitive damages assessed against her for her willful indifference to their rights, would not retain her position of management over the employees of the MPD and the Town of Mocksville.

be awarded full front pay, based on the damage defendants' actions caused to the plaintiffs, their respective careers, and the lives of their families and loved ones. Plaintiffs request that—if reinstatement is not granted—that they be awarded the front pay that the jury advised, based on their consideration of the evidence. If not reinstated, it is very likely that none of these plaintiffs will ever have meaningful careers in law enforcement again.

## Conclusion

For the reasons stated above, each plaintiff should be awarded additional equitable relief for the violations of their constitutional rights, as found by the jury. Though the preference is reinstatement—both within the laws and of each plaintiff individually—if the Court determines that reinstatement under the above just terms, is either not practical or not feasible, the Court should award full compensation in front pay to each plaintiff, as advised by the jury.

This the 30th day of June, 2016.

/s/ Robert M. Elliot
Robert M. Elliot (7709)
R. Michael Elliot (42806)
Attorneys for Plaintiffs
Elliot Morgan Parsonage PA
426 Old Salem Road
Winston-Salem, NC 27101
Telephone: 336-724-2828
Facsimile: 336-724-3335
E-Mail: rmelliot@emplawfirm.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel for defendants:

    Patrick H. Flanagan
    Cranfill Sumner & Hartzog, LLP
    2907 Providence Road, Suite 200
    Charlotte, North Carolina 28211
    Email: phf@cshlaw.com

    Philip M. Van Hoy
    Van Hoy, Reutlinger, Adams & Dunn
    737 East Boulevard
    Charlotte, NC 28203
    Email: phil.vanhoy@vradlaw.com

    /s/Robert M. Elliot
    Robert M. Elliot
    N.C. Bar No. 7709
    Elliot Morgan Parsonage PA
    Winston-Salem, North Carolina 27101
    Telephone: (336) 724-2828
    Fax No. (336) 724-3335
    rmelliot@emplawfirm.com